***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Baddour along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. The Full Commission AFFIRMS the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Reliance Insurance Company was the carrier on risk, and the North Carolina Insurance Guarantee Association is the current carrier.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $302.00, yielding compensation rate of $201.34.
5. Plaintiff's date of injury is March 29, 1999.
6. The dates of compensation shown on the Form 28B are incorrect. Plaintiff was paid compensation from April 7, 1999 through April 11, 1999.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was thirty-five (35) years old and had received a high school education and certification as a licensed practical nurse.
2. On December 17, 1997, plaintiff began her employment with defendant-employer as a certified nursing assistant. Plaintiff's job duties consisted of moving patients, giving patients baths, feeding patients in the dining room, lifting patients from beds, and other heavy work involving patient care.
3. Plaintiff never had any problems with her back prior to March 29, 1999.
4. On March 29, 1999, plaintiff and a co-worker were lifting a patient when plaintiff felt the sudden onset of pain in the right side of her low back. Defendants accepted this claim as compensable, and plaintiff was provided treatment with Tremont Medical Center. Plaintiff reported radiating pain into her legs. She was referred to Daniel J. Albright, M.D., an orthopedic surgeon.
5. Dr. Albright examined plaintiff and diagnosed her with a lumbar strain. Dr. Albright indicated that, with time, plaintiff's condition would resolve. Dr. Albright did not have the Tremont Medical Center records nor did he order an MRI, CT Scan, or any other diagnostic testing.
6. Plaintiff was out of work for a short period of time and then Dr. Albright released her to perform light duty work. Subsequent to the light duty release, plaintiff was released to return to work at full duties.
7. Upon Dr. Albright releasing plaintiff to return to work, plaintiff returned to defendant-employer but was still experiencing pain in her low back.
8. Plaintiff continued to experience pain in her low back while performing duties with defendant-employer, especially when she was bending. Plaintiff assumed the diagnosis that had been given by Dr. Albright was correct and that, with time, her condition would improve. When her condition did not improve, plaintiff attempted to treat the pain with over the counter medications.
9. After returning to work, plaintiff earned her diploma as a licensed practical nurse. Plaintiff continued working for defendant-employer as a licensed practical nurse. Plaintiff's job duties as a licensed practical nurse required her to lift, bathe, and move patients in a similar fashion as she had done before, but the work was not as frequent. In general, the licensed practical nurse position is a lighter duty job than the certified nursing assistant position.
10. Even with the lighter work, plaintiff continued to experience pain in her low back.
11. In April 2000, plaintiff's symptoms noticeably changed. Plaintiff began to have right hip and leg pain that increased significantly over time.
12. In November 2000, plaintiff's pain became so severe that she sought treatment at the emergency room for right leg pain and numbness.
13. Plaintiff did not suffer any type of accident, injury, or other specific traumatic incident to her back following March 29, 1999 through November 2000.
14. After an examination at the emergency room, plaintiff was referred to her family doctor for continued care.
15. Plaintiff presented to Balwinder Singh Sidhu, M.D., her family physician, who examined her and prescribed conservative treatment to deal with plaintiff's back pain.
16. The conservative treatment did not resolve plaintiff's pain and Dr. Sidhu referred plaintiff to Samuel K. St. Clair, M.D., a neurosurgeon.
17. Dr. St. Clair examined plaintiff and determined that plaintiff had low back pain at the L5-S1 level. Dr. St. Clair ordered an MRI. The MRI was the first diagnostic study performed on plaintiff's back since the date of her injury.
18. The MRI indicated a large right-sided L5-S1 disc herniation. Dr. St. Clair recommended surgery to correct this problem. Plaintiff asked for a second opinion regarding the surgical recommendation.
19. In February 2001, plaintiff was seen by T. Craig Derian, M.D., an orthopedic surgeon, for a second surgical opinion. Dr. Derian reviewed plaintiff's medical records and examined plaintiff. At the conclusion of plaintiff's examination, Dr. Derian agreed with Dr. St. Clair that the recommendation for low back surgery was appropriate.
20. Plaintiff has changed employers and is currently employed by Britthaven in Louisburg, North Carolina. Plaintiff is earning significantly higher wages than she previously earned while working for defendant-employer.
21. Plaintiff was involved in an automobile accident on December 4, 2002. While this accident did cause a temporary flare up in her low back pain, the predominate symptoms as a result of this accident were in her mid and upper back.
22. With regard to the issue of whether plaintiff's disc herniation is casually related to her March 29, 1999 work injury, Dr. Albright testified:
 ". . . . the key and critical point of information, I think, I believe, was that visit to Tremont Medical Center soon after injury and some sciatica or numbness or pain was documented radiating into the leg. That's what I need to know. So, early on, she actually had a hint of some nerve aggravation and thus — and thus it can wax and wane after that. . . . So given that she had some sciatica type symptoms in Tremont, then it is plausible that she had indeed a disc injury at that time that evolved and changed and worsened."
23. When asked whether the March 29, 1999 work injury caused plaintiff's disc herniation, Dr. St. Clair testified, "it could have, but if it was extremely large, I would have expected a lot of pain. I mean, it could have been smaller and then got larger as time went on, or something happened to make it get larger."
24. Dr. Derian testified to a reasonable degree of medical certainty that the March 29, 1999 work injury "resulted in initial disc herniation at L5-S1 . . . and that there was a structural worsening or protrusion of the disc towards the spinal canal, resulting in the more severe nerve compression identified as a large disc herniation at L5-S1 central right per MRI scan following the worsening in April of 2000."
25. By filing a Form 33, plaintiff sought approval for medical treatment with Dr. Sidhu, Dr. St. Clair, and Dr. Derian within a reasonable time after incurring the treatment.
26. By filing a Form 18 on January 23, 2001 stating a claim for "HNP L5-S1, full extent unknown-aggravation of and/or change of condition from accepted injury," plaintiff filed a written request for additional medical treatment within two years after the last payment of medical compensation.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence establishes a causal relationship between plaintiff's injury by accident on March 29, 1999 and the herniated disc in her low back. Plaintiff suffered a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the recommended back surgery and all evaluations and treatment provided by Dr. Sidhu, Dr. St. Clair, and Dr. Derian. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1; Rule 408 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
3. Plaintiff is entitled to compensation for future temporary total disability, permanent partial disability, and/or temporary partial disability, should such disability arise as a result of the March 29, 1999 compensable injury by accident or as a result of the treatment therefor. N.C. Gen. Stat. §§ 97-29; 97-30; 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the recommended back surgery and all evaluations and treatment provided by Dr. Sidhu, Dr. St. Clair, and Dr. Derian.
2. Defendants shall pay compensation for future temporary total disability, permanent partial disability, and/or temporary partial disability, should such disability arise as a result of the March 29, 1999 compensable injury by accident or as a result of the treatment therefor.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from any future sums due plaintiff for temporary total, permanent partial, and/or temporary partial disability compensation and paid directly to plaintiff's counsel. If periodic payments are made, the attorney's fee shall be paid by deducting every fourth compensation check due plaintiff.
4. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER